IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

Therl Taylor, #260961,                    )    Civil Action No.:2:13-2213-RMG-WWD
                                          )
                    Petitioner,           )
                                          )    **REPORT AND RECOMMENDATION**
          v.                              )    **OF MAGISTRATE JUDGE**
                                          )
Warden at Allendale,                      )
                                          )
                    Respondent.           )

The Petitioner, a state prisoner proceeding pro se, seeks habeas relief pursuant to 28 U.S.C. § 2254. This matter is before the Court on the Respondent's Motion for Summary Judgment (Dkt. No. 31; see also Dkt. No. 30; Dkt. No. 37.)

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(c), D.S.C., this magistrate judge is authorized to review the instant petition for relief and submit findings and recommendations to the District Court.

The Petitioner brought this habeas action on August 12, 2013. (See Dkt. No. 1.) Petitioner supplemented his petition on or about September 17, 2013. (Dkt. No. 13.) On February 7, 2014, Respondent filed a Motion for Summary Judgment. (Dkt. No. 31; see also Dkt. No. 30; Dkt. No. 37.) By order filed February 10, 2014, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), the Petitioner was advised of the summary judgment procedure and the possible consequences if he failed to adequately respond to the motion. (Dkt. No. 32.) Petitioner filed his Response in Opposition to the Motion for Summary Judgment on or about June 27, 2014. (Dkt. No. 46.)

## PROCEDURAL HISTORY

The Petitioner is currently confined at Allendale Correctional Institution of the South Carolina Department of Corrections. In January of 1999, the York County Grand Jury indicted Petitioner for murder and possession of a weapon during the commission of a violent crime. (R. at 993-94.) Petitioner was represented at his retrial by Michael Matthews,

Esquire, and Matthew Niemic, Esquire. (See R. at 1.) Petitioner proceeded to a retrial by jury before the Honorable Lee S. Alford on January 10 through January 14 of 2005. (See R. at 1-865.)[1] The jury convicted Petitioner as charged, and Judge Alford sentenced Petitioner to thirty-six years on the murder charge and five years, concurrent, on the charge of possession of a weapon during the commission of a violent crime. (R. at 850-53, 864.)

Petitioner appealed and was represented on appeal by Joseph L. Savitz, III, Esquire, of the South Carolina Commission on Indigent Defense. (Dkt. No. 30-1.) In an Anders[2] brief filed on November 20, 2006, appellate counsel argued the trial judge "committed reversible error by allowing the Assistant Solicitor to pit Taylor against the State's forensic pathologist, Dr. James Maynard, on cross-examination." (Dkt. No. 30-1 at 4 of 12.) Mr. Savitz also filed a petition to be relieved as counsel. (Id. at 10 of 12.) Petitioner filed a lengthy *pro se* response to the Anders brief. (See Dkt. No. 30-2.)

In an unpublished opinion filed on October 9, 2007, the South Carolina Court of Appeals dismissed Petitioner's appeal and granted counsel's petition to be relieved. (Dkt. No. 30-3.) The Court of Appeals issued the remittitur on October 26, 2007. (Dkt. No. 30-5.)[3]

On November 7, 2007, the South Carolina Supreme Court issued an Order denying Taylor's request to have the South Carolina Supreme Court "direct the Court of Appeals to accept and act on the petition for rehearing." (Dkt. No. 30-6 at 1 of 2.) That Order also denied the request to file a petition for writ of certiorari and for an extension to file that petition. (See id. at 2 of 2.)

---

[1]In State v. Taylor, 356 S.C. 227, 589 S.E.2d 1 (2003), the South Carolina Supreme Court reversed Petitioner's convictions for murder and possession of a weapon during the commission of a crime of violence, concluding the trial court committed prejudicial error in submitting the issue of mutual combat to the jury. See Taylor, 356 S.C. 227, 589 S.E.2d 1.

[2]Anders v. California, 386 U.S. 738 (1967).

[3]Also on October 26, 2007, the South Carolina Court of Appeals returned Taylor's Petition for Rehearing as untimely filed. (See Dkt. No. 30-4.)

Petitioner then filed a "Motion to Recall/Reinstate the Remittitur," on or about January 10, 2008, in the South Carolina Court of Appeals. (Dkt. No. 30-7.) The Court of Appeals denied that motion on February 7, 2008. (Dkt. No. 30-8.) On or about February 19, 2008, Petitioner filed a *pro se* Petition for Writ of Certiorari. (Dkt. No. 30-9.) On March 19, 2008, the South Carolina Supreme Court denied the petition for writ of certiorari. (Dkt. No. 30-10.)

Petitioner filed an application for post-conviction relief ("PCR") on September 25, 2008, alleging ineffective assistance of trial counsel and ineffective assistance of appellate counsel. (R. at 870-78.)

On February 5, 2010, an evidentiary hearing was held before the Honorable Brooks P. Goldsmith. (R. at 885-958.) Petitioner was present and represented by Charles Brooks, Esquire. (See R. at 885.) In an order dated April 16, 2010, Judge Goldsmith denied the application for post-conviction relief and dismissed the petition. (R. at 959-92.) Petitioner filed a Motion to Reconsider; that motion was denied on April 15, 2010. (See Dkt. No. 30-13 at 35 of 94.)

Petitioner, through his attorney Robert M. Pachak of the South Carolina Commission on Indigent Defense, filed a Johnson Petition for Writ of Certiorari on October 7, 2010. (See Dkt. No. 30-11.)[4] Through counsel, Petitioner raised the following issue:

> Whether trial counsel was ineffective in failing to object to a jury charge instructing that malice may be inferred from the use of a deadly weapon where evidence was presented that would mitigate or justify the homicide?

(Dkt. No. 30-11 at 3 of 8.) Mr. Pachak also filed a petition to be relieved as counsel. (Dkt. No. 30-11 at 7 of 9.) Petitioner filed collection of documents in response to the Johnson petition. (See Dkt. No. 30-12; Dkt. No. 30-13.)

In an order filed July 25, 2013, the South Carolina Court of Appeals denied the petition and granted counsel's request to withdraw. (Dkt. No. 30-14.) In a letter dated August 1, 2013, Taylor filed a petition for rehearing. (Dkt. No. 30-15.) The matter was remitted to

---

[4] See Johnson v. State, 294 S.C. 310, 364 S.E.2d 201 (1988).

3

the lower court on August 12, 2013. (Dkt. No. 30-16.) On August 15, 2013, the South Carolina Court of Appeals issued an order recalling the remittitur. (See Dkt. No. 30-17.) In an order filed September 23, 2013, the South Carolina Court of Appeals denied the petition for rehearing. (Dkt. No. 30-18.)

On or about October 16, 2013, Taylor filed a Petition for Writ of Certiorari. (Dkt. No. 30-19.) The Supreme Court of South Carolina dismissed the petition on October 18, 2013. (Dkt. No. 30-20.) The South Carolina Court of Appeals remitted the matter to the lower court on October 21, 2013. (Dkt. No. 30-21.)

As noted above, Petitioner filed the instant habeas action on August 12, 2013, and supplemented his petition on or about September 17, 2013. (See Dkt. No. 1; Dkt. No. 13.)

## APPLICABLE LAW

### Summary Judgment Standard

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." The News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth., 597 F.3d 570, 576 (4th Cir. 2010) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). In ruling on a motion for summary judgment, "'the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor.'" Id. (quoting Hunt v. Cromartie, 526 U.S. 541, 552 (1999)); see also Perini Corp. v. Perini Constr., Inc., 915 F.2d 121, 123-24 (4th Cir. 1990).

### Habeas Standard of Review

Since the Petitioner filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. Lindh v. Murphy, 521 U.S. 320, 322-23 (1997); Breard v.

Pruett, 134 F.3d 615, 618 (4th Cir.1998).  Under the AEDPA, federal courts may not grant

habeas corpus relief unless the underlying state adjudication:

> 1. resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> 2. resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the State court proceeding.

28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 398 (2000).  "[A] federal habeas

court may not issue the writ simply because that court concludes in its independent

judgment that the relevant state-court decision applied clearly established federal law

erroneously or incorrectly.  Rather, that application must also be unreasonable." Williams,

529 U.S. at 410. "A state court's determination that a claim lacks merit precludes federal

habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state

court's decision." Harrington v. Richter, 131 S.Ct. 770, 786 (2011) (quoting Yarborough v.

Alvarado, 541 U.S. 652, 664 (2004)).

## DISCUSSION

As noted above, Respondent seeks summary judgment in the instant case. (See Dkt.

No. 31; see also Dkt. No. 30.) For the reasons set forth herein, the undersigned

recommends that Respondent's Motion for Summary Judgment (Dkt. No. 31) be granted.

**I. Ground One**

In Ground One, Petitioner contends his trial counsel was ineffective for failing to

request a "specific jury charge that [Petitioner] was not required to retreat as evidence

induced [sic] proved Petitioner immune from the Law of Retreat-Stand his Ground Doctrine."

(Dkt. No. 1 at 9 of 26.) Petitioner asserts his counsel should have argued that he had no

duty to retreat in order for self-defense to apply.

The United States Supreme Court has said that a meritorious ineffective assistance

of counsel claim must show two things: first, that counsel's performance was deficient and,

second, that counsel's deficient performance prejudiced the defense. Strickland v.

Washington, 466 U.S. 668, 687-96 (1984). A court's evaluation of counsel's performance under this standard must be "highly deferential," so as to not "second-guess" the performance.    Id. at 689.    "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Id. (internal quotation marks and citation omitted); see also Bowie v. Branker, 512 F.3d 112, 119 n.8 (4th Cir. 2008); Fields v. Att'y Gen. of Md., 956 F.2d 1290, 1297-99 (4th Cir. 1992); Roach v. Martin, 757 F.2d 1463, 1467 (4th Cir. 1985).  In order to establish the second prong of Strickland, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.  A "reasonable probability" has been defined as "a probability sufficient to undermine confidence in the outcome." Id. While Strickland itself is a deferential standard, when both § 2254(d) and Strickland apply, "review is doubly" deferential. Harrington v. Richter, 131 S.Ct. 770, 788 (2011). Indeed, when § 2254(d) applies, "[t]he question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Harrington, 131 S.Ct. at 788.

In his order dismissing Petitioner's application for PCR, Judge Goldsmith stated, *inter alia*,

> [O]ur courts have never required an attorney to be clairvoyant or anticipate changes in the law which were not in existence at the time of trial. Gilmore v. State, 314 S.C. 453, 445 S.E.2d 454 (1994), overruled on other grounds by Brightman v. State, 336 S.C. 348, 520 S.E.2d 614 (1999). See also Thornes v. State, 310 S.C. 306, 426 S.E.2d 764 (1993); see also Robinson v. State, 308 S.C. 74, 417 S.E.2d 88 (1992); Arnette v. State, 306 S.C. 556, 413 S.E.2d 88 (1992); Kirpatrick v. State, 306 S.C. 359, 412 S.E.2d 389 (1991).
>     Here, trial counsel was not required to be clairvoyant or to anticipate changes in the laws that were not in existence at the time of trial. Gilmore, *supra.* In addition to the evidence and testimony presented in the present action, the record clearly refutes any allegation that the trial court did not charge the jury on the correct law, as it existed at the time of the Applicant's trial. . . . The record also reflects that, as counsel testified, that the trial court

6

judge specifically charged the jury "the State has the burden of disproving self-defense by proof beyond a reasonable doubt." Therefore, the trial judge correctly charged the law of self-defense as applicable to the facts of this case.

With regard to the Applicant's allegations regarding the trial court's jury instruction for "malice" in the voluntary manslaughter charge, this Court finds the Applicant's testimony is not credible while also finding trial counsel's testimony is credible. When reviewing a jury charge for alleged error, an appellate court must consider the "charge as a whole in light of the evidence and issues presented at trial." Keaton ex rel. Foster v. Greenville Hosp. Sys., 334 S.C. 488, 497, 514 S.E.2d 570, 575 (1999). "A jury charge is correct if '[w]hen the charge is read as a whole, it contains the correct definition and adequately covers the law.'" Id. at 496, 514 S.E.2d at 574 (quoting State v. Johnson, 315 S.C. 485, 487 n.1, 445 S.E.2d 637, 638 n.1 (1994)). A jury charge that is substantially correct and covers the law does not require reversal. Id. at 496-98, 514 S.E.2d 570, 514 S.E.2d at 575.

Here, trial counsel's testimony, the trial transcript, appellate court records, and the Applicant's own admission in his PCR applicant [sic] and supporting memorandum all clearly refute any allegation that the trial court's jury charge regarding "malice" created a mandatory presumption or result in burden shifting. Specifically, the trial court instructed the jury, with regard to malice, that "the use of a deadly weapon permits you to infer malice, but it does not require you to infer malice," and that "you as jurors are free to accept or reject this permissive inference depending on your view of the facts."

The Applicant contends this jury charge was erroneous in light of the South Carolina Supreme Court's holding in Belcher, *supra*. However, the Court decided Belcher on October 12, 2009 and specifically held on that date that the ruling would be effective "for all cases which were pending on direct review." Id. at 597, 685 S.E.2d 802. The Applicant's direct appeal was dismissed on October 9, 2007 and the Remittitur was issued on October 26, 2007, more than two years after [sic] the Court reached its decision in Belcher. Therefore, Belcher simply does not apply to Applicant's case. The trial court judge correctly instructed the jury on the law as it existed at the time of the Applicant's trial and did not create any mandatory presumption, or shifts in the burden of proof, regarding malice.

. . .

Regarding jury instructions for involuntary [sic] manslaughter, the duty to retreat, and self-defense, this Court finds that the trial court judge accurately charged the jury on the law as it existed at that time.

(R. at 983-85.)[5]

_____

[5]See State v. Belcher, 385 S.C. 597, 685 S.E.2d 802 (2009).

7

As noted above, Petitioner contends trial counsel was ineffective for failing to request a jury charge that Petitioner had no duty to retreat because he was an invited guest. The state court's rejection of that claim is not contrary to, or an unreasonable application of, clearly established federal law as established by the Supreme Court, nor does it involve an unreasonable determination of the facts. The trial judge charged the jury, *inter alia*,

> I CHARGE YOU FURTHER THE THIRD ELEMENT OF SELF-DEFENSE IS THAT THERE WAS NO OTHER WAY TO AVOID THE DANGER AND THAT–THIS FINAL–THIS ELEMENT OF SELF-DEFENSE IS THAT THE DEFENDANT HAD NO OTHER PROBABLE WAY TO AVOID THE DANGER OF DEATH OR SERIOUS BODILY INJURY OTHER THAN TO ACT AS THE DEFENDANT DID IN THIS PARTICULAR INSTANCE. I CHARGE YOU FURTHER THAT THE DEFENDANT HAD NO DUTY TO RETREAT IF BY DOING SO THE DANGER OF BEING KILLED OR SUFFERING SERIOUS BODILY INJURY WOULD INCREASE.

(R. at 821.) The state court ruled that the trial judge's instruction on the duty to retreat was correct as a matter of South Carolina law. (See R. at 985.) "'[F]ederal habeas corpus relief does not lie for errors of state law.'" Estelle v. McGuire, 502 U.S. 62, 67 (1991) (quoting Lewis v. Jeffers, 497 U.S. 764, 780 (1990)). As the Supreme Court stated in Estelle,

> [I]t  is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.

Id. at 67-68; see also 28 U.S.C. § 2254(a). To the extent Petitioner argues the charge was erroneous under South Carolina law, such a claim is not cognizable on federal habeas review. See Smith v. Moore, 137 F.3d 808, 821-22 (4th Cir. 1998) (refusing to entertain the habeas petitioner's contention that a jury instruction misstated South Carolina law). To the extent Petitioner asserts counsel was ineffective for failing to request a "specific jury charge that [Petitioner] was not required to retreat," such a claim also fails. See Lopez v. Thurmer, 594 F.3d 584, 587 (7th Cir. 2010) ("Because we leave undisturbed the state appellate court's holding that Lopez was not entitled to a felony-murder instruction, its additional ruling

8

that counsel's performance was constitutionally adequate under <u>Strickland</u> was reasonable. It is not well outside the boundaries of permissible differences of opinion to conclude that counsel's performance is constitutionally adequate when he fails to request an instruction that, as a matter of state law, the defendant is not entitled to in the first place." (internal quotation marks and citations omitted)); <u>Davis v. McCall</u>, Civ. A. No. 4:11-cv-3263-MGL-TER, 2013 WL 1282130, at *19 (D.S.C. Feb. 1, 2013), adopted at 2013 WL 1282128 (D.S.C. Mar. 25, 2013) ("Because there was no error in the charge, trial counsel was not ineffective for failing to raise the 'correct' objection and Petitioner was not prejudiced by trial counsel's objection."); <u>Williams v. McNeil</u>, Civ. A. No. 3:08cv308–LC/WCS, 2010 WL 5505377, at *4 (N.D. Fla. Nov. 19, 2010), adopted at 2011 WL 30107 (N.D. Fla. Jan. 4, 2011) ("Petitioner's attorney could not have committed attorney error in failing to request a jury instruction that was not appropriate under state law."); <u>see also Werts v. Vaughn</u>, 228 F.3d 178, 203 (3d Cir.2000) ("counsel cannot be ineffective for failing to raise a meritless claim").[6]

## II. Ground Two

In Ground Two, Petitioner asserts that trial counsel "was ineffective by failing to object when the assistant solicitor repeatedly pitted Petitioner against the State's forensic pathologist on cross-examination." (Dkt. No. 1 at 10 of 26.) The PCR court stated, "This Court further finds that the Applicant's allegation regarding the State's 'pitting' him against another witness is not credible and lacks any merit sufficient to state a ground for relief." (R. at 976.)

---

[6]In fact, counsel stated that he pulled <u>State v. Chambers</u> and <u>State v. Osborne</u>, and the fact pattern in both of those cases involved an intruder coming into the house. (R. at 736.) Counsel noted that "there has been no presentation on my behalf, on behalf of my client, that an intruder was coming into the house." <u>See</u> R. at 736-37; <u>see also State v. Osborne</u>, 202 S.C. 473, 25 S.E.2d 561 (1943); <u>State v. Chambers</u>, 310 S.C. 43, 425 S.E.2d 45 (Ct. App. 1992).

9

At the PCR hearing, Petitioner stated this issue was the same one raised in his

Anders brief. (See R. at 904-05.) Trial counsel testified at the PCR hearing as follows:

> A. Well, as to pitting witnesses again[st] each other, I'm not real sure what he was referring to in that. I didn't really hear anything that would pit witnesses, ones against the other. I'm not sure if he was talking about the pathologist, whether he was talking about Dr. Jenkins or he was talking about our own witness that he had, I wasn't sure who he was talking about that so I can't answer that.
>
> Q. I believe he's referring to Dr. Maynard's testimony compared with Mr. Taylor's testimony in the defense case in chief about numbers of stab wounds and things of that nature.
>
> A. Well, Therl from the very beginning of the case had a real big problem with the fact that they kept referring to the stab wounds being approximately 15 to 16 stab wounds, he said there were actually 11. And the reason being is there was one stab wound that went through an arm and therefore he was saying that that was the reason why it was saying more, but I don't know if that's pitting one witness against another.
>
> Q. If you had observed pitting witnesses against one another such that it may have hurt your defense or cause you any concern, would you have objected?
>
> A. Oh, absolutely.
>
> Q. And if you object and the trial transcript reflects those objections, would you let the transcript speak for itself?
>
> A. I'll let the transcript speak for itself because I've made that objection in past trials before.

(R. at 938-39.)

At trial, Dr. Maynard, the State's forensic pathologist, testified that the decedent was

six foot two and approximately 220 pounds; he also testified that the decedent had fifteen

stab wound injuries. (R. at 158.) According to Dr. Maynard, however, wounds 11, 9, and 8

could arguably have been counted as one stab because the knife went "from outside

through the inside of the arm and back into the soft tissue of the chest lining beneath the

arm"; he stated, "It's all mostly one stab wound, but there are three separate wounds, so we used three different numbers for it." (R. at 167.)

Dr. Maynard testified that he observed Petitioner the day after the shooting; Maynard stated,

> Mr. Taylor's hands had short nails. There was no evidence of any nail breakage on either hand, a small amount of dirt or grease along the edges of the nails. The palms of the hands were relatively clean, no blood or injuries about the hands or outer aspects of the forearms.

(R. at 181.) Dr. Maynard said he observed Taylor's healing surgery scar and that there was no fresh bleeding or fresh injury to that scar. (R. at 182.) When asked if he saw any "injuries that would have bled, required stitches or anything consistent with . . . what [he] saw in [the] autopsy," Dr. Maynard said, "There were no cuts, contusions, or abrasions on [Petitioner]." (R. at 182.) Dr. Maynard testified that there were no wounds to Taylor's back and that Taylor did not have swollen eyes, a broken nose, facial contusions, or "any indication of injury." (R. at 184-85.)

On cross-examination, Dr. Maynard admitted that he did not measure the decedent's height or weight. (R. at 186.) Dr. Maynard indicated that it was possible that the decedent weighed more. (R. at 186.)

Petitioner's testimony at trial differed from Dr. Maynard's testimony. The following exchange occurred during cross examination of Petitioner:

> Q. So the next day do you know where Miranda is?
>
> A. There's nothing funny about it. I mean, this smirk–I mean, it's not funny. This is a very serious situation. You–I mean, in your heart of hearts you realize this.
>
> Q. Yes, sir. I realize a man's dead with fifteen holes in his body. I don't consider that funny at all.
>
> A. I mean, self-defense and you know that's not the correct number as well. I mean, I–this is serious–

11

Q. It's your testimony that there are not fifteen holes in Kevin Carter's body. Is that what you're telling this jury?

A. I'm not going into detail as far as the wounds, because that's what you want, but you know that's an incorrect number. I'm saying anything that touches the skin is considered a stab wound.

Q. Were you here when Dr. Maynard testified?

A. Twice.

Q. Did he testify that there are fifteen holes in Kevin Carter's body?

A. I'm not going to argue with you, sir. Okay. That's the answer you're looking for.

Q. I'm looking for your answer, whatever that is. Did he testify there are fifteen holes–

A. Yes.

Q. –in Kevin Carter's body?

. . .

Q. How big do you say [the decedent] was?

A. He's two hundred and seventy pounds precisely.

Q. Okay. You saw the autopsy, two twenty?

A. He said he didn't weigh him, the autopsy. Mr. Maynard said he didn't weigh him.

Q. You think he missed by fifty pounds?

A. No. I know for a fact, because his driver's license, that's two hundred and seventy. He said he did not weigh him. That's what Mr. Maynard said, your witness.

. . .

Q. Okay. So a looked-to-be three hundred pound man jumped on you, who were in such condition that you couldn't lift over ten pounds, beat you on the head, beat you on the chest, put his knee in you, stomps on you, hits you in

the face, hits you in the head and squeezes your stomach and the injuries that you have to show this jury are what?

A. Well, I had a little cut up here.

Q. Okay. And just as Dr. Maynard missed fifty pounds in his observation, he missed you being cut when he talked about you?

A. From my incision scar, got seventy-seven staples.

. . .

Q. Okay. And he looked at you to see if you had any injuries?

A. Well, he said he didn't give a thorough examination is what he testified to.

Q. And you're saying he missed the cut on your head?

A. Yes, sir. I guess with the hair there or something, but he didn't–he didn't examine me really like one should. . . .

(R. at 665-66, 699-702.)

As noted above, Petitioner asserts his counsel was ineffective for failing to object when the assistant solicitor "repeatedly pitted Petitioner against the State's forensic pathologist on cross-examination." (Dkt. No. 1 at 10 of 26.) The undersigned recommends granting summary judgment to Respondent on Ground Two. As a preliminary matter, to the extent the exchange constitutes pitting, Petitioner pitted himself against Dr. Maynard. Furthermore, a review of the testimony reveals that, at least as to the number of stab wounds, the testimony of Dr. Maynard is not necessarily inconsistent with Petitioner's testimony, as Dr. Maynard plainly stated that one thrust of the knife appeared responsible for three separate wounds. (See R. at 167.) As to the weight issue, Dr. Maynard admitted on cross examination that he did not weigh the decedent and that it was possible the decedent weighed more than 220 pounds. (See R. at 186.) Finally, the disagreement over injuries to the Petitioner centers on what Petitioner stated in his testimony was one "little

13

cut." (See R. at 655.) Given the foregoing, the undersigned recommends granting Respondent's Motion for Summary Judgment on Ground Two. See Harrington, 131 S. Ct. at 786 ("A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."); see also State v. Kelsey, 331 S.C. 50, 69-70, 502 S.E.2d 63, 72 (1998) (improper "pitting" did not warrant reversal where the colloquy did not directly relate to the critical issue in the case); Credell v. Bodison, 818 F. Supp. 2d 928, 938-39 (D.S.C. 2011) (finding the petitioner did not establish prejudice on claim that counsel was ineffective for failing "to object to the prosecution 'pitting' the testimony of various witnesses" because Petitioner "failed to carry his burden of demonstrating that [the issue] . . . would reasonably likely have changed the outcome of the trial").

### III. Ground Three

Petitioner contends in Ground Three that trial counsel was ineffective "for not calling crucial defense witnesses regarding A) decedent's violent history and propensity for violence and B) Petitioner's non-violent history (no prison violence) and reputation for peacefulness and Good Samaritan work." (Dkt. No. 1 at 12 of 26.)

In addressing this claim, the PCR court noted Petitioner's contention that trial counsel was ineffective "for failing to present evidence of the victim's bad character including the victim's reputation for violence." (R. at 963.) The PCR court further noted,

> Trial counsel testified that he obtained the victim's criminal record in light of the Applicant's insistence that the victim had a history of violence and drug use. He stated that the victim's criminal record only showed one charge for assault and battery with intent to kill that involved members of the victim's family. Counsel stated further that he talked to members of the victim's family regarding the victim's history of violence, and that as a result of those conversations he determined that calling the victim's family members to testify at trial would have been harmful to the Applicant's defense. . . .

(R. at 964.) In rejecting the claims set forth in Ground Three, the PCR court stated,

14

The Applicant also alleges trial counsel was ineffective for failing to call "crucial defense witnesses" that would have been character witnesses testifying about some of the Applicant's qualities. He testified that through these witnesses, counsel could have shown the jury that he had been working with law enforcement as a confidential informant, and that he had career ambitions. The Applicant also contends trial counsel should have called witnesses from prior roll call hearings that could have testified about the victim's history of violence. He testified that he did discuss with trial counsel the victim's history of violence and whether to attack the victim's character at trial, but testified that he does not remember trial counsel telling him the victim only had one prior conviction on his criminal record.

. . .

Counsel stated that he recalls speaking with two young men in particular regarding the incident that resulted in the victim's charge for assault and battery with intent to kill, but that those witnesses did not offer any corroboration [or] other helpful information.

. . .

With regard to the Applicant's good character and supporting witnesses, trial counsel testified that the testimony and evidence presented to the jury at trial showed that when this incident occurred, the Applicant had injuries that required staples and imposed physical limitations on him, such that he was not capable of doing the things for which he was charged. He testified that he was able to show the jury that everyone (victim included), except the Applicant and two young children, was intoxicated on the night the incident occurred. Counsel also testified that the Applicant's injuries were the result of a car accident that resulted in the Applicant being charged with driving under the influence, and that he made a motion to suppress any evidence or testimony about the Applicant's pending charges, in particular the failure to stop for a blue light charge. He also addressed the failure to stop charge and related expungement during pre-trial motions, and testified that he successfully got the solicitor to agree not to bring that charge during trial.

Counsel testified further that he researched the character issue and that he understood, in light of his experience in addition to that research, that if he presented evidence or testimony regarding the Applicant's good character, he would be opening the door for the State to attack the Applicant's character. The State would be able to bring up all of the issues counsel was trying to avoid, including the Applicant's criminal history and the pending failure to stop for a blue light charge. He did not want evidence to come out before the jury that the Applicant was working with law enforcement as a confidential informant in order to work off other unrelated criminal charges.

15

Counsel stated that he discussed these issues and his conclusions with the Applicant, despite the Applicant's reluctance to understand or accept counsel's conclusions, and that he explained to the Applicant that, in a self-defense case, the most important part of the trial resolves around what happened, factually, at the scene of the crime, rather than evidence or testimony about someone's character.

. . .

This Court finds the Applicant's testimony and allegations regarding trial counsel's failure to call, prepare, or adequately cross-examine witnesses is not credible, while also finding trial counsel's testimony is credible. The Applicant lists several witnesses he alleges trial counsel should have called to testify at trial. He further alleges those witnesses were necessary because they would have testified about the victim's violent history and drug use, and about the Applicant's own good character including church involvement, volunteer activities, and cooperation with law enforcement on unrelated crimes.

This Court finds the Applicant failed to meet his burden of proving trial counsel performed deficiently as a result of his failure to present these witnesses to testify at trial. Prejudice from trial counsel's failure to interview or call witnesses cannot be shown where the witnesses do not testify at the post conviction relief hearing. Underwood v. State, 309 S.C. 560, 425 S.E.2d 20 (1992); Bassette v. Thompson, 915 F.2d 932 (4th Cir. 1990), cert. denied 499 U.S. 982 (1991). The Applicant did not present the testimony of any witnesses at the post-conviction relief hearing in support of this allegation and therefore failed to prove any prejudice as a result of counsel's failure to present these witnesses at trial.

(R. at 970-75.) The PCR court noted, however, that Petitioner moved for a continuance at his PCR hearing, asserting that "he needed four witnesses to be subpoenaed to testify on his behalf at the PCR hearing but that PCR counsel only met with him for fifteen minutes prior to the hearing and did not have any of his witnesses present at the hearing." (R. at 975.) Despite Petitioner's motion for a continuance, the PCR court ruled as follows:

As noted above, trial counsel articulated valid strategic reasons for any failure to call character witnesses on behalf of the Applicant or other witnesses to testify about the victim's violent history. Applicant has not shown that counsel was deficient in that choice of tactics nor has he proved any prejudice resulting from the alleged deficient performance. Accordingly, these allegations and all related claims are denied.

16

(R. at 977.)

The PCR court's rejection of these two claims of ineffective assistance of counsel does not warrant federal habeas relief. To the extent Petitioner argues trial counsel was ineffective for failing to call certain witnesses, the undersigned notes–as the PCR court did–that those witnesses did not testify at Petitioner's PCR hearing. See Beaver v. Thompson, 93 F.3d 1186, 1195 (4th Cir. 1996) ("[A]n allegation of inadequate investigation does not warrant habeas relief absent a proffer of what favorable evidence or testimony would have been produced."); see also Bassette v. Thompson, 915 F.2d 932, 940-41 (4th Cir. 1990) (concluding the petitioner's claim that other evidence should have been presented during the sentencing phase of his trial failed in "the absence of a proffer of testimony from a witness or witnesses he claims his attorney should have called," stating, "He claims that his counsel conducted an inadequate investigation to discover persons who would testify in his favor, but he does not advise us of what an adequate investigation would have revealed or what these witnesses might have said, if they had been called to testify.").

Regardless of whether those witnesses were subpoenaed to testify at the PCR hearing, counsel testified that he had specific, strategic reasons for not calling witnesses regarding the decedent's history and Petitioner's "non-violent history," and the PCR court credited that testimony. (See Dkt. No. 1 at 12 of 26.) The PCR court's rejection of these claims of ineffective assistance of counsel does not warrant federal habeas relief. See Strickland, 466 U.S. at 690 ("[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable . . . ."); see also Darden v. Wainwright, 477 U.S. 168, 185-86 (1986) (rejecting claim of ineffective assistance of counsel at sentencing phase, stating, *inter alia*, "In this case, there are several reasons why counsel reasonably could have chosen to rely on a simple plea for mercy from petitioner himself. Any attempt to portray petitioner as a nonviolent man would have opened the door

17

for the State to rebut with evidence of petitioner's prior convictions. This evidence had not previously been admitted in evidence, and trial counsel reasonably could have viewed it as particularly damaging."); Meyer v. Branker, 506 F.3d 358, 374 (4th Cir. 2007) ("Holding that such a reasoned determination constituted objectively unreasonable performance would be worse than folly: it would essentially require capital defense counsel to present evidence of remorse, even if, in their considered judgment, the evidence would affirmatively hurt their defendant's case. *Strickland* does not require any such outcome.").

## IV. Ground Four

Citing to Sandstrom v. Montana, 442 U.S. 521 (1979), Leary v. United States, 395 U.S. 6 (1969), In re Winship, 397 U.S. 358 (1970), and Francis v. Franklin, 471 U.S. 307 (1985), Petitioner asserts that trial counsel was ineffective for failing to object "to improper jury instructions that created a mandatory impermissible presumption that was conclusive and rebuttable that shifted the burden of proof in violation of Due Process." (Dkt. No. 1 at 13-14 of 26.)

Petitioner appears to contend his attorney was ineffective in failing to object to the trial court's jury instructions regarding malice. The trial judge instructed the jury as follows:

> NOW, WHAT IS MURDER? MURDER MAY BE DEFINED AS THE WILLFUL, FELONIOUS KILLING OF A HUMAN BEING BY ANOTHER HUMAN BEING WITH MALICE AFORETHOUGHT, THAT MALICE BEING EITHER EXPRESSED MALICE OR INFERRED MALICE.
>
> WHAT IS VOLUNTARY MANSLAUGHTER? VOLUNTARY MANSLAUGHTER MAY BE DEFINED AS THE WILLFUL, FELONIOUS KILLING OF A HUMAN BEING WITHOUT MALICE IN SUDDEN HEAT AND PASSION UPON A SUFFICIENT LEGAL PROVOCATION. SO THAT, AS YOU SEE, THE DIFFERENCE BETWEEN MURDER AND VOLUNTARY MANSLAUGHTER IS IN THE PRESENCE OR THE ABSENCE OF MALICE, MALICE BEING PRESENT IN MURDER, BUT NOT PRESENT IN VOLUNTARY MANSLAUGHTER.
>
> I'M GOING TO DEFINE FOR YOU NOW THE TERM OF MALICE. WHAT IS MALICE? MALICE IS DEFINED IN THE LAW OF HOMICIDE AS A TERM OF ART. THIS IS TECHNICAL TERM IMPORTING WICKEDNESS

18

AND EXCLUDING JUST CAUSE OR LEGAL EXCUSE. IT IS SOMETHING WHICH SPRINGS FROM WICKEDNESS, FROM DEPRAVITY, FROM A DEPRAVED SPIRIT, FROM A HEART DEVOID OF SOCIAL DUTY AND FATALLY BENT ON MISCHIEF. . . .

. . . .

FURTHERMORE, EVEN WHEN THERE IS AN ABSENCE OF A SPECIFIC FIXED AND DELIBERATE INTENT TO TAKE THE LIFE OF A PARTICULAR PERSON OR THAT OF ANY PERSON, **THE LAW SAYS THAT IF IT IS PROVED BEYOND A REASONABLE DOUBT THAT ONE INTENTIONALLY KILLED ANOTHER WITH A DEADLY WEAPON OR WITH A DANGEROUS INSTRUMENTALITY, SUCH AS, A GUN OR A KNIFE, AN INFERENCE OF MALICE MAY ARISE. THE USE OF DEADLY WEAPON PERMITS YOU TO INFER MALICE, BUT IT DOES NOT REQUIRE YOU TO INFER MALICE**. IF FACTS ARE PROVED BEYOND A REASONABLE DOUBT SUFFICIENT TO RAISE AN INFERENCE OF MALICE TO YOUR SATISFACTION, THIS WOULD SIMPLY BE AN EVIDENTIARY FACT TO BE TAKEN INTO CONSIDERATION BY YOU, THE JURY, ALONG WITH OTHER EVIDENCE IN THE CASE AND, AGAIN, YOU MAY GIVE IT SUCH WEIGHT AS YOU FIND IT SHOULD RECEIVE.

YOU AS JURORS ARE FREE TO ACCEPT OR REJECT THIS PERMISSIVE INFERENCE DEPENDING ON YOUR VIEW OF THE FACTS. IN OTHER WORDS, IF SUCH CONDUCT RESULTS DIRECTLY IN THE DEATH OF ANOTHER AND IF -SUCH CONDUCT WAS SO CULPABLE AND INEXCUSABLE, SO AGGRAVATED AND GROSSLY RECKLESS AS TO SHOW AN ACTIVE, INTENTIONAL DISREGARD OF THE CONSEQUENCES OF HUMAN LIFE, THIS DENOTING A MALIGNANT SPIRIT, A HEART DEVOID OF SOCIAL DUTY AND FATALLY BENT ON MISCHIEF, INFERENCE OF MALICE MAY ARISE. FURTHERMORE, IT IS NOT JUST CARELESSNESS NOR MERE RECKLESSNESS OR A PASSIVE INDIFFERENCE TO THE SAFETY OF OTHERS. THIS CONDUCT, WHEN IT SHOWS A DELIBERATE AND INTENTIONAL DESIGN TO SO USE OR EMPLOY OR HANDLE A DEADLY WEAPON OR DANGEROUS INSTRUMENTALITY SO AS TO ENDANGER THE LIFE OF ANOTHER OR OF OTHERS WITHOUT JUST CAUSE OR EXCUSE MAY BE SUFFICIENT TO RAISE THIS INFERENCE. HOWEVER, IT IS FOR YOU, THE JURY, TO DECIDE BEYOND A REASONABLE DOUBT WHETHER UPON ALL THE FACTS AND CIRCUMSTANCES OF THIS CASE THE DEFENDANT ALLEGED — THE DEFENDANT'S ALLEGED USE OF A DEADLY WEAPON DEMONSTRATED SUCH AN INTENTIONAL DISREGARD FOR HUMAN LIFE THAT MALICE MAY BE INFERRED FROM THE USE OF THE DEADLY WEAPON AND IT IS FOR YOU, THE JURY, TO DECIDE WHAT WEIGHT, IF ANY, SHOULD BE GIVEN THIS FACT.

(R. at 810-13 (emphasis added).)

In his order dismissing Petitioner's application for PCR, Judge Goldsmith stated, *inter alia*,

[O]ur courts have never required an attorney to be clairvoyant or anticipate changes in the law which were not in existence at the time of trial. Gilmore v. State, 314 S.C. 453, 445 S.E.2d 454 (1994), overruled on other grounds by Brightman v. State, 336 S.C. 348, 520 S.E.2d 614 (1999). See also Thornes v. State, 310 S.C. 306, 426 S.E.2d 764 (1993); see also Robinson v. State, 308 S.C. 74, 417 S.E.2d 88 (1992); Arnette v. State, 306 S.C. 556, 413 S.E.2d 88 (1992); Kirpatrick v. State, 306 S.C. 359, 412 S.E.2d 389 (1991).

Here, trial counsel was not required to be clairvoyant or to anticipate changes in the laws that were not in existence at the time of trial. Gilmore, *supra.* In addition to the evidence and testimony presented in the present action, the record clearly refutes any allegation that the trial court did not charge the jury on the correct law, as it existed at the time of the Applicant's trial. . . .

With regard to the Applicant's allegations regarding the trial court's jury instruction for "malice" in the voluntary manslaughter charge, this Court finds the Applicant's testimony is not credible while also finding trial counsel's testimony is credible. When reviewing a jury charge for alleged error, an appellate court must consider the "charge as a whole in light of the evidence and issues presented at trial." Keaton ex rel. Foster v. Greenville Hosp. Sys., 334 S.C. 488, 497, 514 S.E.2d 570, 575 (1999). "A jury charge is correct if '[w]hen the charge is read as a whole, it contains the correct definition and adequately covers the law.'" Id. at 496, 514 S.E.2d at 574 (quoting State v. Johnson, 315 S.C. 485, 487 n.1, 445 S.E.2d 637, 638 n.1 (1994)). A jury charge that is substantially correct and covers the law does not require reversal. Id. at 496-98, 514 S.E.2d 570, 514 S.E.2d at 575.

Here, trial counsel's testimony, the trial transcript, appellate court records, and the Applicant's own admission in his PCR applicant [sic] and supporting memorandum all clearly refute any allegation that the trial court's jury charge regarding "malice" created a mandatory presumption or result in burden shifting. Specifically, the trial court instructed the jury, with regard to malice, that "the use of a deadly weapon permits you to infer malice, but it does not require you to infer malice," and that "you as jurors are free to accept or reject this permissive inference depending on your view of the facts."

The Applicant contends this jury charge was erroneous in light of the South Carolina Supreme Court's holding in Belcher, *supra.* However, the Court decided Belcher on October 12, 2009 and specifically held on that date that the ruling would be effective "for all cases which were pending on direct review." Id. at 597, 685 S.E.2d 802. The Applicant's direct appeal was dismissed on October 9, 2007 and the Remittitur was issued on October 26, 2007, more than two years after [sic] the Court reached its decision in Belcher. Therefore, Belcher simply does not apply to Applicant's case. The trial court judge correctly instructed the jury on the law as it existed at the time

of the Applicant's trial and did not create any mandatory presumption, or shifts in the burden of proof, regarding malice.

. . .

(R. at 983-85.)[7]

To the extent Petitioner asserts counsel was ineffective for failing to object to the charge on malice because it created a "mandatory impermissible presumption," a review of the record reveals the instructions pertained to an inference, not a mandatory presumption. As such, Petitioner is not entitled to federal habeas relief on such a ground. See Mason v. Allen, 605 F.3d 1114, 1121 (11th Cir. 2010) ("To the extent that Mason argues that the State failed to advise him of his *Miranda* rights, we find this claim refuted by the record. Accordingly, we cannot say that the state court's ruling on the legality of his confession is contrary to or an unreasonable application of clearly established federal law."); see also Wallace v. Sec'y, Fla. Dep't of Corr., Civ. A. No. 5:11-cv-325-Oc-29PRL, 2013 WL 5929338, at *6 (M.D. Fla. Nov. 4, 2013) (rejecting the petitioner's claim that the prosecution breached the terms of his plea agreement, stating, "[I]n addition to being refuted by the plea colloquy and the plea agreement, the transcript[] of the plea negotiations compels a conclusion that Brigham did not offer to investigate Petitioner's alibi in exchange for a guilty plea. Therefore, Petitioner's assertion that the postconviction denial of this claim was based upon an unreasonable determination of the facts is conclusively refuted by the record, and this claim is denied. 28 U.S.C. § 2254(d).").

And to the extent Petitioner, citing State v. Belcher, 385 S.C. 597, 685 S.E.2d 802 (2009), contends that counsel was ineffective for failing to object to the malice charge, Petitioner is entitled to no relief. The state court concluded that the "trial court judge correctly instructed the jury on the law as it existed at the time of the Applicant's trial . . . ." (R. at 985.) "'[F]ederal habeas corpus relief does not lie for errors of state law.'" Estelle v.

---

[7]See State v. Belcher, 385 S.C. 597, 685 S.E.2d 802 (2009).

McGuire, 502 U.S. 62, 67 (1991) (quoting Lewis v. Jeffers, 497 U.S. 764, 780 (1990)); see also Estelle, 502 U.S. at 67-68 ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); 28 U.S.C. § 2254(a). To the extent Petitioner argues the charge was erroneous under South Carolina law, such a claim is not cognizable on federal habeas review. See Smith v. Moore, 137 F.3d 808, 821-22 (4th Cir. 1998) (refusing to entertain the habeas petitioner's contention that a jury instruction misstated South Carolina law). To the extent Petitioner asserts counsel was ineffective for failing to object to the charge, such a claim also fails because the charge did not misstate South Carolina law. See Lopez v. Thurmer, 594 F.3d 584, 587 (7th Cir. 2010) ("Because we leave undisturbed the state appellate court's holding that Lopez was not entitled to a felony-murder instruction, its additional ruling that counsel's performance was constitutionally adequate under Strickland was reasonable. It is not well outside the boundaries of permissible differences of opinion to conclude that counsel's performance is constitutionally adequate when he fails to request an instruction that, as a matter of state law, the defendant is not entitled to in the first place." (internal quotation marks and citations omitted)); Davis v. McCall, Civ. A. No. 4:11-cv-3263-MGL-TER, 2013 WL 1282130, at *19 (D.S.C. Feb. 1, 2013), adopted at 2013 WL 1282128 (D.S.C. Mar. 25, 2013) ("Because there was no error in the charge, trial counsel was not ineffective for failing to raise the 'correct' objection and Petitioner was not prejudiced by trial counsel's objection."); Williams v. McNeil, Civ. A. No. 3:08cv308–LC/WCS, 2010 WL 5505377, at *4 (N.D. Fla. Nov. 19, 2010), adopted at 2011 WL 30107 (N.D. Fla. Jan. 4, 2011) ("Petitioner's attorney could not have committed attorney error in failing to request a jury instruction that was not appropriate under state law."); see also Werts v. Vaughn, 228 F.3d 178, 203 (3d Cir.2000) ("counsel cannot be ineffective for failing to raise a meritless claim").

Despite Petitioner's citation to Belcher, Petitioner is not entitled to federal habeas relief on this claim. Belcher was decided on October 12, 2009; therein, the Supreme Court of South Carolina held that "the 'use of a deadly weapon' implied malice instruction has no place in a murder . . . prosecution where evidence is presented that would reduce, mitigate, excuse, or justify the killing . . . ." Belcher, 385 S.C. at 610, 685 S.E.2d at 809. The court stated, however,

> Because our decision represents a clear break from our modern precedent, today's ruling is effective in this case and for all cases which are pending on direct review or not yet final where the issue is preserved. Our ruling, however, will not apply to convictions challenged on post-conviction relief.

Id. at 612-13, 685 S.E.2d at 810. Petitioner's direct appeal was over long before Belcher was decided; he is therefore not entitled to federal habeas relief on this ground. See Ward v. Warden of Lieber Corr. Inst., Civ. A. No. 0:11-3277-RBH-PJG, 2013 WL 1187133, at *18 (D.S.C. Feb.15, 2003), adopted at 2013 WL 1187112 (D.S.C. Mar. 20, 2013) (finding that Belcher was not applicable because it was decided after the petitioner's direct appeal was final); Horton v. Warden, Kirland Corr. Inst., Civ. A. No. 9:12-2668-CMC-BHH, 2013 WL 57703 at *1 n.1 (D.S.C. Jan. 4, 2013) (discussing Belcher and finding "[t]he determination of when a change in state law becomes effective is purely a state law issue"); Brown v. Cartledge, Civ. A. No. 1:12-139-TLW-SVH, 2012 WL 4712019 at *10 (D.S.C. Aug. 23, 2012), adopted at 2012 WL 4761433 (D.S.C. Oct. 3, 2012) ("Because Petitioner's conviction was affirmed in 2005 and he was on appeal from denial of PCR when Belcher was decided, the change in law did not apply to his case, and the jury charge was appropriate when given.").

## V. Ground Five

In Ground Five, Petitioner asserts that trial counsel was "ineffective for failing to object or otherwise permit a mandatory presumption charge." (Dkt. No. 1 at 16 of 26.) Petitioner states, "Since voluntary manslaughter is expressly defined as the unlawful killing

of another without malice, jury instruction creating mandatory presumption of malice precludes manslaughter and clearly prejudiced Petitioner charged with murder." (Id.)

Respondent is entitled to summary judgment on Ground Five for the reasons set forth above in the undersigned's analysis of Ground Four.

## VI. Ground Six

In Ground Six, Petitioner asserts that trial counsel was "ineffective for failing to object or otherwise attempt to prevent [the] trial judge's continuous jury charge that they may infer malice from the use of a deadly weapon when self defense was a central issue in the case." (Dkt. No. 1 at 16 of 26.)

Respondent is entitled to summary judgment on Ground Six for the reasons set forth above in the undersigned's analysis of Ground Four.

## VII. Ground Seven

Petitioner asserts in Ground Seven that trial counsel was ineffective "by failing to request [a] charge which instructed the jury that they could not infer malice solely from the possession of a pocket knife if they otherwise had a reasonable doubt that malice existed." (Dkt. No. 1 at 17 of 26.)

Respondent is entitled to summary judgment on Ground Seven for the reasons set forth above in the undersigned's analysis of Ground Four.

## VIII. Ground Eight

Petitioner contends in Ground Eight that trial counsel was ineffective for "failing to adequately explain the law as it pertains to manslaughter to Petitioner and even more so to the jury." (Dkt. No. 1 at 17 of 26.) Petitioner asserts that "[c]ounsel prejudiced [Petitioner's] case by failing to specifically request appropriate jury instructions for the jury's consideration." (Id.)

To the extent Petitioner seeks to again challenge the jury instruction on malice, such a claim should be rejected for the reasons set forth above in the undersigned's analysis of Ground Four. To the extent Petitioner argues his counsel was ineffective for failing to adequately research malice and the law of self defense, such an argument is addressed herein. The PCR court noted Petitioner's allegation that counsel "was ineffective for failing to conduct legal research . . . and fully prepare for trial." (R. at 962.) The PCR court stated, *inter alia*,

> This Court finds that the Applicant has failed to establish that trial counsel was ineffective with investigating and preparing for this matter. . . . Trial counsel conducted a significant amount of legal research and investigation in preparation for the Applicant's trial . . . . Counsel presented expert testimony to rebut the State's evidence, adequately cross-examined the State's witnesses, and more than adequately presented the self-defense theory presented at trial.

(R. at 966.) Counsel's alleged failure to investigate and prepare is also addressed below in the undersigned's analysis of Grounds Seventeen and Eighteen. Simply put, there is no evidence of any fact or point of law counsel failed to research or discover, other than Petitioner's conclusory allegation that counsel was ineffective in these regards; this does not warrant federal habeas relief.

## IX. Ground Nine

In Ground Nine, Petitioner asserts that trial counsel "was ineffective for failing to specifically request the self defense jury charge that the state is required to disprove beyond a reasonable doubt each element of self defense." (Dkt. No. 1 at 18 of 26.)

Whether counsel requested the instruction or not, the instruction was given. The trial judge instructed the jury as follows:

> SELF-DEFENSE IS A COMPLETE DEFENSE AND ENTITLES ONE CHARGED WITH UNLAWFUL MURDER OR VOLUNTARY MANSLAUGHTER TO AN ACQUITTAL IF THE LEGAL ELEMENTS OF THE PLEA OF SELF-DEFENSE ARE SHOWN TO YOUR SATISFACTION BY THE EVIDENCE. SELF-DEFENSE IS A COMPLETE DEFENSE AND IF IT

IS ESTABLISHED, YOU MUST FIND THE DEFENDANT NOT GUILTY. **THE STATE HAS THE BURDEN OF DISPROVING SELF-DEFENSE BY PROOF BEYOND A REASONABLE DOUBT**.

(R. at 816 (emphasis added).) The trial judge subsequently stated, in his charge to the jury,

> YOU SHOULD NOT CONVICT HIM ON EITHER CHARGE, EITHER, THAT IS TO SAY, MURDER OR VOLUNTARY MANSLAUGHTER UNLESS HIS GUILT ON THAT CHARGE, **INCLUDING THE ABSENCE OF SELF-DEFENSE, HAS BEEN ESTABLISHED BEYOND A REASONABLE DOUBT**.

(R. at 822 (emphasis added).) The PCR court noted the trial judge gave the at-issue instruction and stated, "[T]he trial judge correctly charged the law of self-defense as applicable to the facts of this case." (R. at 984.) Based on the foregoing, the undersigned recommends granting Respondent's Motion for Summary Judgment on Ground Nine. See Mason, 605 F.3d at 1121 (denying habeas relief on claim that state failed to advise petitioner of his Miranda rights where record refuted claim); cf. Schriro v. Landrigan, 550 U.S. 465, 474 (2007) ("[I]f the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing.").

**X. Ground Ten**

In Ground Ten, Petitioner states,

> Forced appointed indigent appellate counsel's sole issue on appeal subsequent to Petitioner's PCR:

> "Trial counsel was ineffective in failing to object to a jury charge instructing that malice may be inferred from the use of a deadly weapon where evidence was presented that would mitigate or justify the killing."

(Dkt. No. 1 at 18 of 26.)

To the extent Petitioner argues a deficiency on the part of counsel who represented him on appeal from the denial of his application for post-conviction relief, such a claim is not cognizable in the instant action. See 28 U.S.C. § 2254(i) ("The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall

not be a ground for relief in a proceeding arising under section 2254."). To the extent Petitioner asserts trial counsel was ineffective for failing to object to the jury instruction regarding malice, Respondent is entitled to summary judgment on such a claim for the reasons set forth above in the undersigned's analysis of Ground Four.

## XI. Ground Eleven

Petitioner asserts in Ground Eleven that his counsel was ineffective "for not challenging malice versus manslaughter appropriately." (Dkt. No. 1 at 18 of 26.) Petitioner also asserts as follows:

> Part Two: Counsel failed to effectively present defense of lessor [sic] included manslaughter in light of heat of passion, Petitioner being attacked and legal provocation.
>
> Part Three: Defense failed to object to confusing malice charge or even request a curative instruction respecting "malice" or the judge's charge as a whole.
>
> Part Four: Defense was ineffective by failing to present significant facts regarding lesser included charge of voluntary manslaughter argument that the killing would fall under manslaughter rather than "malice" murder . . . .
>
> Part Five: Defense counsel ineffective by not developing fact that Petitioner saw something shiny in decedents hand. On record at both trials . . . . Additionally, knife was knocked completely out Petitioner's hand twice has [sic] decedent attempted to retrieve knife.

(Id.)

To the extent Petitioner asserts trial counsel was ineffective for failing to object to the jury instruction regarding malice, Respondent is entitled to summary judgment on such a claim for the reasons set forth above in the undersigned's analysis of Ground Four. Petitioner also appears to claim in Ground Eleven that trial counsel was ineffective for failing to "effectively present [the] defense [sic]" of voluntary manslaughter. The undersigned recommends granting summary judgment to Respondent on this claim.

27

Although Petitioner was asked at his PCR hearing about counsel's failure to present significant facts regarding the lesser-included offense of voluntary manslaughter, Petitioner did not specify any facts at his PCR hearing. (See R. at 921-22.) In the order denying Petitioner's application for post-conviction relief, Judge Goldsmith noted trial counsel's testimony that Petitioner "emphatically" rejected the plea offer of voluntary manslaughter, as Petitioner "always insisted he was not guilty of these crimes because he was acting in self defense." (R. at 964-65.) The state court found that counsel "articulated valid reasons for employing self-defense as a trial strategy, particularly in light of the Applicant's insistence that he only acted in self-defense . . . ." (R. at 968.) The PCR court also found that trial counsel "presented expert testimony to rebut the State's evidence, adequately cross-examined the State's witnesses, and more than adequately prepared the self-defense theory presented at trial." (R. at 966.)

Petitioner is not entitled to federal habeas relief on his claim that counsel was ineffective for failing to present significant facts regarding voluntary manslaughter. At the PCR hearing, counsel testified that Petitioner was "emphatic" about turning down a plea offer for voluntary manslaughter because "[h]is position from day one was this case is a self-defense case, clean and simple." (R. at 940.) Counsel testified regarding his trial strategy of self-defense as follows:

> The trial strategy in a self-defense case, you have to show that the other person was the aggressor. And we–I think through our presentation we were showing that not only through Dean Wideman who was the expert that we brought in on that issue but also through the testimony of others that at one point Mr. Taylor was getting kicked and Mr. Carter was on top of him beating him up, the fact that Mr. Carter was a very large man compared to Mr. Taylor's size.

(R. at 945.) Counsel testified he believed he was able to present all of that to the jury. (R. at 945.) Counsel testified that they brought in the expert Dean Wideman to "try[] to show a person who was underneath the aggressor stabbing upwards with the knife," testimony

consistent with Dr. Maynard's testimony that the fatal wound "was an upward stroke through the ribs into the heart chamber." (R. at 946.) Counsel testified, "[W]e put everything we could in front of [the jurors] to get them to go with . . . self-defense." (R. at 947.)

The state court's rejection of this claim does not warrant federal habeas relief; the undersigned therefore recommends granting summary judgment to Respondent on this ground for relief.

## XII. Ground Twelve

Petitioner contends in Ground Twelve that his defense counsel "did not seek Petitioner's desirability of accepting the plea offer made by [the] government, and refused to talk, as requested by defendant with decedent's family . . . ." (Dkt. No. 1 at 19 of 26.)

In addressing this claim, the PCR court noted Petitioner's testimony on cross-examination that "trial counsel told him the State was offering him a plea to voluntary manslaughter, but stated that the plea was not for any certain number of years." (R. at 963-64.) The state court also noted Petitioner's testimony "that he did not understand the plea offer or conversations about a plea with counsel, but acknowledged at the PCR hearing that he turned down the plea offer twice." (R. at 964.) The PCR court noted trial counsel's testimony as follows:

> Trial counsel testified further that he entered into plea negotiations with the solicitor on the Applicant's behalf. He stated that, generally, when the State prosecutes someone and a new or second trial is involved, the State usually extends a plea offer instead of putting the victim's family through another trial. Counsel testified that, in the Applicant's case, the solicitor offered the Applicant a plea to voluntary manslaughter. He further stated that, although he cannot remember whether the solicitor offered a specific number of years, he is certain he told the Applicant he would be facing less time in prison for voluntary manslaughter than he would if convicted at trial for murder. Counsel testified that the Applicant emphatically rejected the solicitor's plea offer, and that the Applicant always insisted he was not guilty of these crimes because he was acting in self-defense.

(R. at 964-65.) In rejecting the claims set forth in Ground Twelve, the PCR court stated, *inter alia*,

> This Court finds the Applicant's testimony and allegations in support of his claim that trial counsel did not adequately communicate or consult with him regarding his trial is not credible. This Court further finds that trial counsel's testimony regarding the Applicant's participation and involvement in the development of this case is credible.

(R. at 969.) Factual findings on credibility are "presumed to be correct"; Petitioner has the "burden of rebutting the presumption by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); see also Wilson v. Ozmint, 352 F.3d 847, 858 (4th Cir. 2003). Petitioner has not done so.

## XIII. Ground Thirteen

Petitioner contends in this ground for relief that trial counsel was ineffective for failing "to present affirmative defenses of extreme emotional disturbance or duress." (Dkt. No. 1 at 19 of 26.)  The PCR court stated, *inter alia*,

> Trial counsel also testified that the defenses of duress, coercion, and defense of others did not apply in the Applicant's case. Counsel explained that on the night of the incident, the victim and a lady were in an argument inside the house, and the Applicant intervened, but that when the actual attack occurred it was the result of the Applicant trying to defend himself, not the lady. Counsel testified that he explained to the Applicant why the defense of others theory did not apply to his case. He testified that emotional distress, duress, and coercion were not separate defenses and really only applied to the Applicant's case in the context of self-defense. He stated that nonetheless, he does not believe duress in and of itself applied to the Applicant's case.
>
> . . .
>
> Nonetheless, the Applicant could not point to any specific matters counsel failed to discover, or any defenses that could have been pursued had counsel investigated further or been more fully prepared, such that the result of the trial would have been different. Trial counsel articulated valid reasons for employing self-defense as a trial strategy, particularly in light of the Applicant's insistence that he only acted in self-defense, and further articulated valid reasons regarding why the other defenses did not apply. Counsel objected where appropriate, cross-examined the State's witnesses, presented two expert witnesses on behalf of the Applicant in support of their defense,

> reviewed all of the discovery, and conducted an adequately thorough
> investigation into the facts and issues in this case. Therefore, the Applicant
> failed to meet his burden of showing that trial counsel was deficient and that
> the result of his trial would have been different but for these alleged
> deficiencies. Accordingly, this allegation, including all of the Applicant's
> supporting claims, is denied.

(R. at 965, 968.)

The undersigned has been unable to locate an *affirmative defense* of extreme emotional disturbance under South Carolina law. See S.C. CODE ANN. § 16-3-20(C)(b)(2) (mitigating circumstances include, *inter alia*, that "[t]he murder was committed while the defendant was under the influence of mental or emotional disturbance"); see also State v. Bixby, 373 S.C. 74, 77-78, 644 S.E.2d 54, 56 (2007) ("Following the plain language of 16-3-20, the State may seek the death penalty upon conviction or adjudication of guilt of a defendant of *murder*."). Regarding duress, the South Carolina Supreme Court has stated, "[I]n South Carolina, duress is not a defense to murder." State v. Kelsey, 331 S.C. 50, 62 n.2, 502 S.E.2d 63, 69 n.2 (1998) (citing State v. Rocheville, 310 S.C. 20, 425 S.E.2d 32 (1993)). Given the foregoing, and the state court's conclusion that trial counsel articulated valid strategies for not pursuing other defenses, the undersigned recommends granting summary judgment to Respondent on Ground Thirteen.

## XIV. Ground Fourteen

Petitioner asserts in Ground Fourteen that trial counsel was ineffective for failing to introduce "any of decedent's violent bullying reputation, propensity for violence and specific instances of violent conduct or violent trait of character that Petitioner was well aware in personal knowledge." (Dkt. No. 1 at 19 of 26.)

The undersigned recommends granting summary judgment to Respondent on Ground Fourteen for the reasons set forth above in the undersigned's analysis of Ground Three.

**XV. Ground Fifteen**

Petitioner states in Ground Fifteen, "Defense attorney failed to request specific defense of others jury charge, which violated Petitioner's U.S. 6th Amendment Right." (Dkt. No. 1 at 19 of 26.)

As set forth in the analysis of Ground Thirteen, trial counsel testified that defense of others was inapplicable to Petitioner's case because when the actual attack occurred it was the result of the Petitioner trying to defend himself, not the lady. (See R. at 965.) The PCR court found that Petitioner failed to satisfy either prong of Strickland and stated, "Trial counsel articulated valid reasons for employing self-defense as a trial strategy, particularly in light of the Applicant's insistence that he only acted in self-defense, and further articulated valid reasons why the other defenses did not apply." (R. at 968.) The undersigned recommends granting summary judgment to Respondent on this claim. See Turk v. White, 116 F.3d 1264, 1266-67 (9th Cir. 1997) (defense counsel was not ineffective for not pursuing a diminished-capacity defense because it would have conflicted with the primary defense of self-defense); Anaya v. Lemaster, 202 F.3d 281, at *1 (10th Cir. 1999) (unpublished table decision) (no habeas relief on claim of ineffective assistance of counsel for failing to develop a diminished capacity defense where the state court "determined that defense counsel made a tactical choice not to pursue such an instruction because the evidence was weak and the defense expert concluded that Mr. Anaya's intoxication did not affect his judgment"); Whalen v. Roper, Civ. A. No. 4:03CV1092 ERW, 2006 WL 2349627, at *4 (E.D. Mo. Aug. 11, 2006) (no habeas relief on claim that trial counsel was ineffective where counsel decided to pursue psychiatric defense rather than self-defense).

**XVI. Ground Sixteen**

Petitioner contends in Ground Sixteen that counsel "was ineffective during voir dire." (Dkt. No. 1 at 19 of 26.) The PCR court noted the following testimony:

32

The Applicant alleges trial counsel was ineffective for failing to properly voir dire the jury. . . .

. . .

Trial counsel testified that he did not have any concerns about the jurors, the jury foreman, or trial court's jury charges. . . . He also submitted voir dire questions he wanted the trial court judge to ask the jurors, but the judge threw out those proposed questions because he thought they were profiling.

This Court finds the Applicant's testimony and allegations regarding the jury and jury charges are not credible and lack any merit, while also finding trial counsel's testimony is credible. Jury selection is inherently a matter of trial tactics. Palacio v. State, 333 S.C. 506, 511 S.E.2d 62 (1999); Magazine v. State, 361 S.C. 610, 606 S.E.2d 761 (2004). Moreover, a criminal defendant has no right to a trial by a particular jury, but only a right to a trial by a competent and impartial jury. Id. The trial court judge polls the jury to ensure the verdict is unanimous. Green v. State, 351 S.C. 184, 569 S.E.2d 318 (2002) (noting that the jury foreman's comment the jury reached its verdict "reluctantly" was not indicative of any error, and affirming the PCR court's refusal to speculate what the jury poll would be, despite applicant's allegation he observed a juror crying).

In the instant case, the Applicant has provided no credible evidence or testimony that trial counsel's performance during voir dire and selection of jurors, jury deliberation, jury notes, or the jury poll was deficient, nor has the Applicant provided any credible evidence that the jury foreman was biased or that the jury verdict was not unanimous. Trial counsel submitted proposed questions to the trial court judge for voir dire and struck jurors based on his own experience and intuition as a trial lawyer.

. . .

The record also reflects trial court judge asked all of the relevant and appropriate questions during voir dire. . . .

(See R. at 981-82.)

The PCR court found, as a fact, that the trial judge asked "all of the relevant and appropriate questions during voir dire." (R. at 982.) Such a factual finding is presumed to be correct. See 28 U.S.C. § 2254(e)(1). In light of such a factual determination, and Petitioner's failure to rebut it with clear and convincing evidence, Petitioner is not entitled to federal habeas relief on his claim that counsel was ineffective during voir dire. See Keith v. Mitchell, 455 F.3d 662, 676-77 (6th Cir. 2006) (no habeas relief on claim that counsel was ineffective during voir dire where, *inter alia*, the petitioner failed to show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would

have been different, where a reasonable probability is a probability sufficient to undermine confidence in the outcome" (citation and internal quotation marks omitted); see also White v. Dingle, —F.3d—, 2014 WL 2958632, at *4 (8th Cir. July 2, 2014) (no habeas relief on claim of ineffective assistance for failing to discover that jury foreperson worked at the same place as the victim's roommate because, *inter alia*, the petitioner failed to show prejudice where there was "no direct evidence of bias"); Ramsey v. Bowersox, 149 F.3d 749, 757 (8th Cir. 1998) ("Because the trial court's questioning reasonably assured Ramsey of a chance to detect a potential juror's prejudice about the death penalty, Ramsey was not denied his rights to due process and a fair trial." (internal citation omitted)). The undersigned recommends granting summary judgment to Respondent on Ground Sixteen.

## XVII. Ground Seventeen and Ground Eighteen

In Ground Seventeen, Petitioner asserts that trial counsel was ineffective for "failing to investigate," and in Ground Eighteen, Petitioner asserts that trial counsel was ineffective "for not being thoroughly prepared." (Dkt. No. 1 at 19 of 26.) The PCR court summarized the testimony on these issues as follows:

> The Applicant alleges trial counsel was ineffective for failing to conduct legal research and investigate his case, obtain all of the discovery, and fully prepare for trial. The Applicant contends that trial counsel was ineffective for failing to present evidence rebutting the State's forensic evidence presented at trial, and that trial counsel should have reconstructed the events that occurred the night of the incident. He further contends that trial counsel was ineffective for failing to investigate his mental state and social history at the time of the incident, as well as other related possible defenses such as an insanity defense, duress, coercion, involuntary manslaughter, or defense of others. The Applicant also alleges that trial counsel did not adequately prepare the self-defense theory presented at trial.

> The Applicant further asserts that trial counsel failed to adequately investigate the victim's medical records, police reports, and SLED reports for possible exculpatory evidence, chain of custody issues, or impeachment evidence to use against the State's witnesses. He testified that trial counsel was ineffective for failing to produce and discover exculpatory evidence, and more specifically contended that trial counsel was ineffective because SLED

34

did not analyze it until approximately eight months later and counsel did not obtain the results until shortly before trial.

. . .

Trial counsel testified that he obtained the solicitor's entire file regarding the Applicant's case and that he also had the transcript of the Applicant's first trial on these same charges. Counsel testified that he met with the Applicant several times to discuss the issues in his case, and that the Applicant was very involved in every aspect of his case. Trial counsel also testified that he had a private investigator assisting him with the Applicant's case that spoke with witnesses and went to the crime scene with him. Counsel and the investigator looked through the entire area, including the home, to investigate further and to get a better understanding of what happened the night of the incident. He stated that he and the investigator mapped out where certain events occurred, but that it was not necessary to reconstruct the entire crime.

Trial counsel testified that he obtained the victim's criminal record in light of the Applicant's insistence that the victim had a history of violence and drug use. He stated that the victim's criminal record only showed one charge for assault and battery with intent to kill that involved members of the victim's family. Counsel stated further that he talked to members of the victim's family regarding the victim's history of violence, and that as a result of those conversations he determined that calling the victim's family members to testify at trial would have been harmful to the Applicant's defense.

(R. at 962-64.)

In denying relief on these two claims of ineffective assistance of counsel, the PCR court found that Petitioner's "testimony regarding trial counsel's investigation and preparation is not credible, while also finding trial counsel's testimony is credible." (R. at 965.) The PCR court stated,

When claims of ineffective assistance of counsel are based on lack of investigation or preparation, an Applicant challenging his conviction must show specific prejudice resulting from counsel's alleged lack of preparation. United States v. Cronic, 466 U.S. 648, 104 S. Ct. 2039 (1984); U.S. v. LaRouche, 896 F.2d 815 (4th Cir. 1990).
. . .
This Court finds that the Applicant has failed to establish that trial counsel was ineffective with investigating and preparing for this matter. Trial counsel noted that he and his investigator personally investigated and mapped the crime scene, and that he reviewed all of the discovery materials, and that he discussed the discovery, possible defenses, character issues, and decisions

> regarding witnesses with the Applicant prior to trial. Trial counsel conducted a significant amount of legal research and investigation in preparation for the Applicant's trial and was not required to reconstruct all of the events that occurred the night of the crime. Counsel presented expert testimony to rebut the State's evidence, adequately cross-examined the State's witnesses, and more than adequately prepared the self-defense theory presented at trial.

(R. at 965-66.) The court further stated, "[T]he Applicant could not point to any specific matters counsel failed to discover, or any defenses that could have been pursued had counsel investigated further or been more fully prepared, such that the result of the trial would have been different." (R. at 968.)

Petitioner has not shown that the state court's rejection of these claims was contrary to, or an unreasonable application of, clearly established federal law, as determined by the Supreme Court; nor has Petitioner shown the decision was based on an unreasonable determination of the facts. The undersigned therefore recommends granting summary judgment to Respondent on Grounds Seventeen and Eighteen.

## XVIII. Ground Nineteen

In this ground for relief, Petitioner contends that trial and appellate counsel "both failed to preserve insufficiency of evidence as certain portions of the State's case w[ere] physically and illogically implausible." (Dkt. No. 1 at 19 of 26.)

The PCR court addressed this claim as follows:

> The Applicant alleges trial counsel was ineffective for failing "to preserve insufficiency of evidence" because the State's case "was physically and illogically impossible," and the "evidence was not sufficient to warrant a murder charge." He contends the facts in this case do not support a finding of "malice murder," but instead "would fall under manslaughter." The Applicant makes several other related allegations that the evidence presented at trial is insufficient to support his convictions. The post-conviction relief court cannot consider the sufficiency of the evidence against a convicted defendant. S.C. Code Ann. §17-27-20(a)(6) (1985). The Uniform Post-Conviction Procedure Act is not a substitute for remedies that were available before and during the original trial or by review on motion for a new trial or on appeal. Irick v. State, 264 S.C. 632, 216 S.E.2d 545 (1975); Simmons v. State, 264 S.C. 417, 215 S.E.2d 883 (1975). Accordingly, this Court finds that any and all allegations challenging the sufficiency of the evidence, including any and all allegations

that the State failed to meet its burden of proof at trial, are not cognizable in this PCR action and are summarily dismissed.

(Dkt. No. 30-44 at 23 of 36.)

The undersigned agrees with Respondent's contention that Ground Nineteen is frivolous. After the State rested its case, Petitioner's counsel moved for a directed verdict. (See R. at 431-34.) Petitioner's counsel renewed his motion for a directed verdict at the close of the evidence. (See R. at 733-34.) And after the jury returned its verdict, counsel moved for judgment notwithstanding the verdict; the court interpreted that motion as a motion for a new trial. (See R. at 854-56.) Because Petitioner's claim is refuted by the record, the undersigned recommends granting summary judgment to Respondent on Ground Nineteen. See Mason v. Allen, 605 F.3d 1114, 1121 (11th Cir. 2010) ("To the extent that Mason argues that the State failed to advise him of his *Miranda* rights, we find this claim refuted the record. Accordingly, we cannot say that the state court's ruling on the legality of his confession is contrary to or an unreasonable application of clearly established federal law."); see also Wallace v. Sec'y, Fla. Dep't of Corr., Civ. A. No. 5:11-cv-325-Oc-29PRL, 2013 WL 5929338, at *6 (M.D. Fla. Nov. 4, 2013) (rejecting the petitioner's claim that the prosecution breached the terms of his plea agreement, stating, "[I]n addition to being refuted by the plea colloquy and the plea agreement, the transcript[] of the plea negotiations compels a conclusion that Brigham did not offer to investigate Petitioner's alibi in exchange for a guilty plea. Therefore, Petitioner's assertion that the postconviction denial of this claim was based upon an unreasonable determination of the facts is conclusively refuted by the record, and this claim is denied. 28 U.S.C. § 2254(d).").

**XIX. Ground Twenty**

Petitioner contends in Ground Twenty that his attorney was ineffective for failing to challenge "a proper chain custody of decedent's delayed blood sample results." (Dkt. No. 1 at 20 of 26.) Petitioner further states,

37

> Defense was ineffective not to adequately argue prosecutorial misconduct regarding timely release results which were favorab[le] and material to Petitioner. Defense was ineffective by failing to establish true and correct analysis with genuine result of urine, blood & hair. . . .

(Dkt. No. 1 at 20 of 26.)

To the extent Petitioner asserts counsel was ineffective for failing to challenge chain of custody, it appears such a claim is procedurally barred. See, e.g., Montgomery v. Bodison, C.A. No. 6:09-778-HMH-WMC, 2010 WL 297667, at *4 (D.S.C. Jan 20, 2010) (although petitioner raised some claims in his petition, they were procedurally barred because the PCR court did not rule on them, and petitioner did not file a Rule 59(e) motion). Regardless, Petitioner is not entitled to relief on such a claim. See Hill v. Reed, No. 2:06 0812 MBS, 2006 WL 3354509, at *7 (D.S.C. Nov. 17, 2006) (concluding petitioner was not entitled to relief under § 2254 where trial counsel stipulated to the chain of custody and stating, "The petitioner did not present any evidence at the PCR hearing that there was any defect in the chain of custody . . . . *See, e.g., Pryor v. Norris*, 103 F.3d 710, 713-14 (8th Cir. 1997) (defendant failed to establish prejudice from counsel's failure to object to chain of custody because she failed to show objection would have been sustained or that prosecution would not have established complete chain of custody if objection had been made)."); see also Cowans v. Bagley, 639 F.3d 241, 252 (6th Cir. 2011) (rejecting petitioner's claim that trial counsel should have challenged whether the evidence remained in the police's chain of custody because, *inter alia*, the claim "falters on the prejudice prong of Strickland" where the petitioner "has not provided any evidence . . . that raises a question about whether the palm print in fact ever left the State's custody"). Claim(s) related to prosecutorial misconduct are addressed under Ground Thirty.

## XX. Ground Twenty-One

Petitioner contends that appointed counsel was ineffective. (Dkt. No. 1 at 20 of 26.) To the extent Petitioner asserts appellate counsel was ineffective for filing an Anders brief,

Petitioner is not entitled to federal habeas relief. The PCR court found, inter alia, Petitioner failed to establish prejudice regarding his claim of ineffective assistance of appellate counsel. (See R. at 989.) Accordingly, the undersigned recommends granting summary judgment to Respondent on Petitioner's claim of ineffective assistance of appellate counsel. See Richardson v. South Carolina, Civ. A. No. 3:09-1107-MBS, 2010 WL 1346420, at *13 (D.S.C. Mar. 31, 2010).

## XXI. Ground Twenty-Two

In this ground for relief, Petitioner alleges that his attorney was ineffective "by not requesting the five (5) jury notes as part of the record versus 'court identification,' nor have defendant present at crucial stages regarding jury instructions and re-charges." (Dkt. No. 1 at 20 of 26.)

The PCR court addressed this claim as follows:

[Petitioner] . . . alleges trial counsel inadequately handled issues that arose regarding the jurors, particularly regarding the jury poll and jury notes. . . .

. . .

In the instant case, the Applicant has provided no credible evidence or testimony that trial counsel's performance during voir dire and selection of jurors, jury deliberation, jury notes, or the jury poll was deficient, nor has the Applicant provided any credible evidence that the jury foreman was biased or that the jury verdict was not unanimous. . . .

. . .

According to the record and the documents, evidence, and testimony presented in the current action indicate that both the trial court judge and trial counsel properly addressed all issues regarding jury deliberation and jury notes. Nonetheless, the Applicant has failed to provide this Court with any credible evidence that trial counsel's alleged failures regarding the jurors prejudiced the defense. . . .

(Dkt. No. 30-44 at 23 of 36; R. at 981-82.)

The PCR court specifically found Petitioner produced no "credible evidence" of any prejudice to the defense on these issues. (R. at 982.) Petitioner has not rebutted the

39

presumption of correctness to such a finding. <u>See</u> 28 U.S.C. § 2254(e)(1); <u>see also Wilson v. Ozmint</u>, 352 F.3d 847, 858 (4th Cir. 2003). Furthermore, as noted by the Respondent, this ground is frivolous, as the trial judge specifically stated the notes were to be made part of the record. (<u>See</u> R. at 843, 848.) The undersigned therefore recommends granting summary judgment to Respondent on Ground 22.

## XXII. Ground Twenty-Three

Petitioner asserts in Ground Twenty-Three that counsel was ineffective "for failing to present an imperfect self defense theory." (Dkt. No. 1 at 20 of 26.)

Petitioner's assertion in this ground appears to be cumulative; he appears to assert ineffective assistance of counsel because the theory of self-defense was not accepted by the jury. Such a claim does not warrant habeas relief. <u>See Wallace v. Hobbs</u>, Civ. A. No. 5:11-CV-00053 JLH-JTK, 2012 WL 2675473, at *5 (E.D. Ark. June 14, 2012), adopted at 2012 WL 2675472 (E.D. Ark. July 6, 2012) ("Petitioner essentially contends that the jury erred when it failed to accept his self-defense claims, but a state court's determination of a factual issue . . . shall be presumed to be correct . . . [and the p]etitioner has not presented any evidence to rebut the jury's findings regarding his self-defense claims." (internal quotation marks omitted).)

As Respondent notes, perhaps Petitioner is referring to <u>State v. Finley</u>, 277 S.C. 548, 290 S.E.2d 808 (1992), when he refers to an "imperfect self-defense." In <u>Finley</u>, the South Carolina Supreme Court stated,

> [A]ppellant argues the trial judge erred in refusing to charge the jury the theory of "imperfect self-defense." If believed by the jury, appellant contends an actual, although unreasonable, belief that he was in imminent danger of bodily harm is a defense to the charge of murder which reduces the crime to voluntary manslaughter. ***This is not the law in South Carolina***. Heretofore, we have fully addressed the law of self-defense and its component elements. *See State v. Hendrix*, 270 S.C. 653, 244 S.E.2d 503 (1978). Appellant's actual belief of imminent danger must be such that a reasonable prudent man of ordinary firmness and courage would have entertained the same belief.

40

Finley, 277 S.C. at 551, 290 S.E.2d at 809 (emphasis added). Because an "imperfect self defense" does not exist under South Carolina law, counsel's failure to request such a charge did not prejudice Petitioner. Respondent is entitled to summary judgment on Ground 23.

## XXIII. Ground Twenty-Four

In Ground 24, Petitioner contends trial counsel was ineffective for "withdrawing motion on page 20, lines 3-9 of second trial transcript." (Dkt. No. 1 at 20 of 26.)

As a preliminary matter, it does not appear this issue was raised to the PCR court, and if it was, it was not addressed in the PCR court's order. The claim is therefore barred in the instant action. See, e.g., Montgomery v. Bodison, C.A. No. 6:09-778-HMH-WMC, 2010 WL 297667, at *4 (D.S.C. Jan 20, 2010) (although petitioner raised some claims in his petition, they were procedurally barred because the PCR court did not rule on them, and petitioner did not file a Rule 59(e) motion). Regardless, Petitioner is not entitled to relief on this claim. The undersigned has reviewed page twenty, lines three through nine of the trial transcript, and observes no withdrawal of a motion. (See R. at 20.) At page twenty of the transcript, the solicitor, trial counsel, and the trial judge were having a discussion about which of Petitioner's convictions could be used for impeachment purposes. (See R. at 18-28.) Specifically, the portion of the transcript highlighted by Petitioner pertains to charges that arose out of Petitioner's car accident, a car accident that injured Petitioner and "may or may not have affected his abilities" on the night of the decedent's death. (See R. at 20, 18.) It does not appear to the undersigned that the motion was withdrawn. Counsel was able to introduce evidence regarding the injuries Petitioner sustained in the car accident on November 5, 1998, without the introduction of the criminal charges arising from that accident. (R. at 603.) The undersigned has reviewed Mr. Taylor's testimony, and it does not appear the charges were brought up either on direct or cross-examination. (See R. at 601-

41

731.) The record refutes this claim; Petitioner is therefore not entitled to federal habeas relief on Ground 24.

## XXIV. Ground Twenty-Five

In Ground 25, Petitioner contends that counsel was ineffective "by failing to act, request or object to the limited factually neutral charge approved in Allen v. US, 175 S Ct 154, 157-158 (1893)." (Dkt. No. 1 at 20 of 26.)

It does not appear that this claim was raised to the PCR court, and if it was, it was not addressed by that court. It is, therefore, barred. See Montgomery v. Bodison, C.A. No. 6:09-778-HMH-WMC, 2010 WL 297667, at *4 (D.S.C. Jan 20, 2010).

## XXV. Ground Twenty-Six

Petitioner asserts in this ground for relief that "defense counsel advised Petitioner his good character, law enforcement work, educational background and documentative [sic] licensed business would be fairly presented for the jury's consideration, yet was not during trial." (Dkt. No. 1 at 20 of 26.)

Respondent is entitled to summary judgment on Ground 26 for the reasons set forth above in the undersigned's analysis of Ground Three.

## XXVI. Ground Twenty-Seven

In Ground 27, Petitioner contends trial counsel was ineffective for "failing to present an expert witness in self defense, particularly one that would factually attest to Petitioner's mind set having suffered life threatening injuries prior to attack by decedent." (Dkt. No. 1 at 20 of 26.)

The PCR court did note Petitioner's testimony that "trial counsel should have called other experts to testify for the defense about his mental state, self-defense, and blood spatter evidence." (R. at 971.) The PCR court also noted counsel's testimony about the experts hired by the defense:

Counsel further testified that Wideman was an expert witness hired out of Texas, and that he presented this expert witness to testify at trial particularly about the blood spatters found everywhere at the crime scene, in support of their self-defense theory. Trial counsel also testified that he presented another expert witness, Dr. Edmund Higgins, to testify as an expert at trial in the fields of eyewitness identification and memory, particularly to show the jury how intoxication affects an eyewitness' testimony and recollection of events.

. . .

Trial counsel testified that, as a matter of trial strategy, he presented expert testimony regarding blood spatter evidence, stab wounds, and problems with relying on eyewitness identifications and human memory in order to show that the victim was the aggressor and that the Applicant was acting in self-defense. Counsel further testified he believed he was able to show the victim was the aggressor through the evidence and testimony from witnesses presented at trial. Counsel specifically referred to Wideman's testimony, and stated that the testimony and evidence showed the jury that the Applicant was getting kicked during the fight, that the victim was on top of the Applicant, and that the victim was significantly larger than the Applicant.

(R. at 972-74.) In addition, although counsel did not hire an expert to attest to Petitioner's mind set, counsel was able to get the information regarding Petitioner's physical limitations in front of the jury. (See R. at 972-73.)

Petitioner is not entitled to federal habeas relief on this claim of ineffective asssistance of counsel. As a preliminary matter, no expert witness testified as to Petitioner's mind set at the PCR hearing; this failure precludes relief. See Beaver v. Thompson, 93 F.3d 1186, 1195 (4th Cir. 1996) ("[A]n allegation of inadequate investigation does not warrant habeas relief absent a proffer of what favorable evidence or testimony would have been produced."); see also Dempsey v. Burtt, No. 4:05-2464-HMH-TER, 2006 WL 1579134, at *12 (D.S.C. June 2, 2006) (petitioner failed to show prejudice where petitioner did not have an expert testify at the PCR hearing). Furthermore, given the plethora of evidence counsel did present at trial regarding self-defense, evidence that included testimony of two expert witnesses, Petitioner suffered no prejudice from counsel's failure to present an expert

43

witness to testify as to Petitioner's mind set. Respondent is entitled to summary judgment on Ground 27.

## XXVII. Ground Twenty-Eight

Petitioner asserts in Ground 28 that counsel was ineffective "for failing to object to repeated prejudicial words 'crime, crime scene, and victim' instead of alleged victim or location or incident, especially in light of Petitioner's sole self defense." (Dkt. No. 1 at 21 of 26.)

The PCR court noted counsel's testimony as follows:

> Trial counsel testified that he made a pre-trial motion regarding repeated references to "victim," "murder," "crime," and "crime scene," but that there was no relevant or controlling case law in South Carolina at the time. He testified that he researched the issue and found cases in other states in support of his argument, and argued those cases in support of his motion. Counsel also renewed this motion during the trial, but the trial court judge ruled against him.

> [T]his Court finds the record clearly refutes any allegation that trial counsel did not sufficiently preserve or address any issues regarding . . . the use of the words "victim," "crime scene," and other similar words throughout the trial. In particular, counsel made two motions regarding the use of the words "victim," "murder," "crime scene," and the like, and the trial judge denied counsel's motions. In fact, the trial court judge specifically ruled that the use of those words, within this context, was not prejudicial.

(R. at 978.) In a footnote, the PCR judge stated, "The trial court judge also ruled that witnesses could not testify that they were present 'at the scene of a murder,' and limited verbal references to this effect, but ruled overall that the use of the word 'victim' and other similar references, was not prejudicial to the Applicant's defense." (R. at 978 n.8.)

The record refutes Petitioner's allegation of ineffective assistance of counsel. (See R. 28-34, 206-10.) The undersigned therefore recommends granting summary judgment to Respondent on this claim.

44

## XXVIII. Ground Twenty-Nine

Petitioner contends in this ground that counsel was ineffective for "breaching his duty and agreement with Petitioner and his grandfather." (Dkt. No. 1 at 21 of 26.)

Petitioner's claim in Ground 29 is unclear and should therefore be dismissed. See Rule 2(c) of the Rules Governing Section 2254 and 2255 Cases (habeas petition must "state the facts supporting each ground"); see also Nickerson v. Lee, 971 F.2d 1125, 1136 (4th Cir.1992) ("Unsupported, conclusory allegations do not entitle a habeas petitioner to an evidentiary hearing."), abrogated on other grounds by Yeatts v. Angelone, 166 F.3d 255 (4th Cir.1999); see also Wiggins v. Lockhart, 825 F.2d 1237, 1238 (8th Cir.1987) (stating that "a habeas corpus petitioner must allege sufficient facts to establish a constitutional claim" and conclusory statements are insufficient). In addition, it does not appear that such a claim was raised to and ruled upon by the PCR court; it is, therefore, barred. See Montgomery v. Bodison, C.A. No. 6:09-778-HMH-WMC, 2010 WL 297667, at *4 (D.S.C. Jan 20, 2010).

## XXIX. Ground Thirty

In Ground 30, Petitioner asserts that trial counsel was ineffective for "failing to prevent and bring to light assistant solicitor's intentional prosecutorial misconduct, deceptiveness and misrepresenting facts as well as covering up facts in Petitioner's favor which would have produced a different result." (Dkt. No. 1 at 21 of 26.)

The PCR court addressed this claim as follows:

> The Applicant alleges trial counsel was ineffective for failing to "point out jury tampering" and for failing to challenge, on the record, the prosecutor's and the trial court judge's "tainting the jury." He further alleges that trial counsel failed to object . . . to the "prosecutor's use of perjured testimony" to preserve it for appeal. The Applicant also alleges trial counsel was ineffective for failing to object to certain remarks the prosecutor made during opening and closing arguments, and throughout trial.

> The Applicant also alleges throughout this PCR action that the transcript is not a complete record of the trial court proceedings because

45

several bench conferences were held between the attorneys and the trial court judge that are not part of the record. This Court finds this allegation is wholly without merit. The transcript accurately reflects all on-the-record testimony, statements, objections, and motions. Any relevant matters were later restated for the record where appropriate.

. . .

First, this Court finds the record clearly refutes any allegation that trial counsel did not sufficiently preserve or address any issues regarding prosecutorial misconduct, the jury, and the use of the words "victim," "crime scene" and other similar words throughout the trial. . . . In sum, this Court finds that the Applicant's allegations regarding ineffective assistance of counsel for failing to properly address alleged prosecutorial misconduct issues are denied.

With regard to the Applicant's allegations regarding prosecutorial misconduct that are not presented within the context of ineffective assistance of counsel, this Court finds these allegations must be summarily dismissed. Prosecutorial misconduct claims allege issues that were or could have been raised on direct appeal. Therefore, such claims are not cognizable in an action for post-conviction relief. See Judge v. State, 321 S.C. 554, 471 S.E.2d 146 (1996), overruled on other grounds. For example, the Applicant alleges the State engaged in prosecutorial misconduct when the solicitor made allegedly improper or inflammatory remarks and when the solicitor presented allegedly perjured testimony at trial. These claims raise direct appeal issues that are not cognizable in an action for post-conviction relief. S.C. Code Ann. § 17-27-20(b) (2003).

Nevertheless, this Court finds the Applicant has failed to present any credible evidence to this Court in support of this allegation or any other related allegations in support of this claim. See U.S. v. Bagley, 473 U.S. 667, 682, 105 S. Ct. 3375 (1985). According to the record, there is simply no credible evidence supporting a finding that such misconduct actually occurred nor is there any evidence before this Court to support a finding that any testimony from the State's witnesses was false. Trial counsel was aware of the evidence and witnesses the State would present at trial, researched all of the issues in preparation for trial, and cross-examined each of the State's witnesses accordingly. The jury heard all of this testimony and was able to evaluate the credibility of every witness the State presented. See Lorenzen v. State, 376 S.C 521, 657 S.E. 2d 771 (2008).

Moreover and to the extent the Applicant's prosecutorial misconduct allegations include any claims that the State withheld any evidence from the defense, this Court finds that those claims are wholly without merit. Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed. 2d 215 (1963). In evaluating post-trial Brady claims, an applicant must show that (1) the prosecution

suppressed evidence, (2) the evidence would have been favorable to the accused, and (3) the suppressed evidence is material. United States v. Wolf, 839 F.2d 1387 (10th Cir. 1988). A Brady violation does not warrant reversal if the evidence is merely cumulative or impeaching. Clark v. State, 315 S.C. 385, 434 S.E.2d 266 (1993). "Impeachment or exculpatory evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." Id., 434 S.E.2d at 268.

 Here, the Applicant has not presented any evidence he alleges the State withheld, nor has he shown there was a reasonable probability that the result of the trial would have different had any such evidence been disclosed. This Court finds that the State did not violate Brady and that the Applicant has failed to meet his burden of proving that he is entitled to relief on these grounds. Therefore, this allegation and any related claims are denied.

(R. at 977-79.)

Petitioner is not entitled to federal habeas relief on this claim. Aside from his conclusory allegation of prosecutorial misconduct, and counsel's failure to object to it, the undersigned has located no evidence of such misconduct. As the PCR court noted, it is unclear what evidence Petitioner alleges was withheld in violation of Brady, and the PCR specifically found "no credible evidence" supporting Petitioner's claim of misconduct. The undersigned therefore recommends granting summary judgment to Respondent on Ground Thirty.

**XXX. Ground Thirty-One**

Petitioner asserts in this ground for relief that counsel was ineffective "for continuing representation after fact of conflict of interest" and that counsel "ineffectively failed to properly address the conflict of interest issue." (Dkt. No. 1 at 21 of 26.)

The PCR court stated,

To the extent the Applicant alleges trial counsel's representation was deficient or affected by any alleged conflict of interest, this Court finds such allegations are wholly without merit. The mere possibility of a conflict of interest is insufficient to challenge a criminal conviction. Langford v. State, 310 S.C. 357, 426 S.E.2d 793 (1993). "In order to establish a violation of the Sixth Amendment, a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance."

47

> Duncan v. State, 281 S.C. 435, 438, 315 S.E.2d 809 (1984). The Applicant must show that his attorney actually owed duties to a party whose interests were adverse to the Applicant. Id.; Thomas v. State, 346 S.C. 140, 551 S.E.2d 254 (2001). The Applicant has failed to meet his burden of proving he is entitled to relief based on this ground and all other related grounds. Accordingly, this allegation is denied.

(R. at 989-90.)

Petitioner has not shown the state court's rejection of this claim is contrary to, or an unreasonable application of, clearly established federal law as decided by the Supreme Court, nor has Petitioner shown the state court decision is based on an unreasonable determination of the facts. Like Petitioner's claim of prosecutorial misconduct, it is unclear upon which facts Petitioner bases his claim. To demonstrate counsel's performance was deficient, a petitioner asserting a conflict of interest claim must demonstrate (1) that an actual conflict existed and (2) that it adversely affected counsel's performance. See Cuyler v. Sullivan, 446 U.S. 335, 350 (1980). The state court found Petitioner failed to meet his burden of proof, and Petitioner has not shown that the state court's rejection of this claim warrants federal habeas relief. Accordingly, the undersigned recommends granting Respondent's Motion for Summary Judgment as to Ground 31.

## XXXI. Ground Thirty-Two

In Ground 32, Petitioner alleges that the PCR judge "failed to properly provide Petitioner a continuance." (Dkt. No. 1 at 22 of 26.)

Respondent is entitled to summary judgment on Ground 32 because alleged defects in state PCR proceedings are not cognizable in a federal habeas action. See Bryant v. Maryland, 848 F.2d 492, 493 (4th Cir. 1988) (holding that errors in state PCR proceedings are not cognizable on federal habeas review); see also 28 U.S.C. § 2254(i) ("The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254.").

48

**XXXII. Ground Thirty-Three**

Petitioner asserts in Ground 33 that the PCR judge erred "by not allowing Petitioner to continue pro se representation." (Dkt. No. 1 at 22 of 26.)

Respondent is entitled to summary judgment on Ground 33 because alleged defects in state PCR proceedings are not cognizable in a federal habeas action. See Bryant, 848 F.2d at 493; see also 28 U.S.C. § 2254(i).

**XXIII. Ground Thirty-Four**

In Ground 34, Petitioner states, "Special PCR Judge Goldsmith erroneously failed to grant Petitioner some Relief at the appropriate opportunity based on constitutional violations." (Dkt. No. 13 at 1 of 2.)

Respondent is entitled to summary judgment on Ground 34 because alleged defects in state PCR proceedings are not cognizable in a federal habeas action. See Bryant, 848 F.2d at 493; see also 28 U.S.C. § 2254(i).

**XXXIV. Ground Thirty-Five**

Petitioner states in Ground 35, "Despite Petitioner's pro se representation he received gross ineffective (11th Hour) PCR counsel, violating his, including but not limited to, 6th and 14th Amended [sic] Constitutional Rights." (Dkt. No. 13 at 1 of 2.)

Respondent is entitled to summary judgment on Ground 35 because alleged defects in state PCR proceedings are not cognizable in a federal habeas action. See Bryant, 848 F.2d at 493; see also 28 U.S.C. § 2254(i).

**XXXV. Ground Thirty-Six**

Petitioner states, in this ground for relief, "Petitioner's Due Process and Equal Protection Clause were infringed." (Dkt. No. 13 at 1 of 2.) Such an allegation does not comply with Rule 2(c) of the Rules Governing Section 2254 and 2255 cases. See Rule 2(c) of the Rules Governing Section 2254 and 2255 Cases (habeas petition must "state the facts

49

supporting each ground"); see also Nickerson v. Lee, 971 F.2d 1125, 1136 (4th Cir.1992) ("Unsupported, conclusory allegations do not entitle a habeas petitioner to an evidentiary hearing."), abrogated on other grounds by Yeatts v. Angelone, 166 F.3d 255 (4th Cir.1999); see also Wiggins v. Lockhart, 825 F.2d 1237, 1238 (8th Cir.1987) (stating that "a habeas corpus petitioner must allege sufficient facts to establish a constitutional claim" and conclusory statements are insufficient). Petitioner is entitled to summary judgment.

## **CONCLUSION**

It is therefore RECOMMENDED, for the foregoing reasons, that Respondent's Motion for Summary Judgment (Dkt. No. 31) be GRANTED; and the Petitioner's habeas petition be DISMISSED WITH PREJUDICE. It is also RECOMMENDED that a certificate of appealability be denied.[8]

IT IS SO RECOMMENDED.

WALLACE W. DIXON
UNITED STATES MAGISTRATE JUDGE

August 1, 2014
Charleston, South Carolina

**The parties' attention is directed to the important notice on the next page.**

---

[8]A certificate of appealability "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A prisoner satisfies this standard by demonstrating that reasonable jurists would find the district court's assessment of his constitutional claims is debatable or wrong and that any dispositive procedural ruling by the district court is likewise debatable. See Miller-El v. Cockrell, 537 U.S. 322, 327 (2003); Slack v. McDaniel, 529 U.S. 473, 484 (2000); Rose v. Lee, 252 F.3d 676, 683-85 (4th Cir. 2001). In this case, the undersigned recommends concluding that the standard for the issuance of a certificate of appealability has not been met.

### Notice of Right to File Objections to Report and Recommendation

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk**
**United States District Court**
**Post Office Box 835**
**Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).